**STATE of Missouri, Plaintiff-Respondent,**

v.

**Rudolph HUDSON, Defendant-Appellant.**

No. 35091.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 16, 1974.

John E. Bell, James W. Huck, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Karen I. Harper, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

In a two count indictment, defendant was charged with the commission of two felonies: attempted robbery, first degree, and assault with intent to kill with malice aforethought. Since he had been charged under the Second Offender Act after verdicts of guilty on both counts, sentences of fifteen and forty years on each count respectively were imposed by the court to run concurrently.

We first consider defendant's contention that the court erred in failing to grant his motion for a judgment of acquittal on the charge of attempted robbery because the evidence presented did not support this charge. In support of this contention, defendant argues that the most that can be said of the evidence is that it shows that defendant was present immediately before the attempted robbery with no intention of participating in it. Considering the evidence which was submitted to the jury, we believe that the jury could have found and inferred that defendant and one Walter Quarrels approached a vending truck at about 11:00 p. m. on the evening of November 5, 1971, at North Market and Garrison in the City of St. Louis. Both bought sandwiches from an attendant in the truck and after making the purchases, they walked down the street for about a half block and then returned to the truck. When they returned, both had pistols in their hands. Quarrels said that he wanted to rob the truck. Defendant told Quarrels, in the presence of the attendant, that they shouldn't do this and then walked out of sight of the truck attendant. About this time, the proprietor of a nearby tavern

came to the truck to buy a sandwich. As he approached, he saw a man flourishing a pistol and went back to the tavern to notify one of his customers, an off-duty police officer, of the incident. The officer went outside and heard Quarrels tell the vending truck attendant to give him everything that he had. The police officer went up behind Quarrels, placed a gun at his back, and said: "Police Officer, give me the gun." They began scuffling and the defendant came out from the rear of the truck and fired shots at the police officer, striking him in the head and in the mouth. The police officer fired back at the man and wounded him. Thereupon, Quarrels turned toward the officer and was fatally shot by the police officer.

Under these facts, defendant's activity at the scene of the crime was more than mere presence. He and Quarrels were together when they first approached the vending truck. They walked away together and returned, each armed with a pistol. In spite of his initial protestation concerning the robbery, the defendant remained close enough to the scene so as to be able to shoot the police officer twice when it became apparent that Quarrels was being taken into police custody for his criminal conduct. One who aids or encourages the commission of a crime and is present for that purpose is guilty as a principal in the first degree upon conviction. § 556.170, RSMo 1969, V.A.M.S.; State v. Murray, 445 S.W.2d 296, 298[3] (Mo. 1969). Presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal act may be inferred. Evidence which fairly shows any form of affirmative participation in a crime is sufficient to support the conviction. State v. Reed, 453 S.W.2d 946, 948[3] (Mo.1970).

Defendant also contends that the trial court erred in denying defendant's motion for mistrial when it developed, after the jury was impaneled and sworn, that a juror notified the judge that she did not

know whether or not she knew the police officer. She said that if she had known him it would have been when they were both teenagers. She stated that if it developed that this witness was the same person that she knew, she would be able to decide the facts of the case without reference to her acquaintance with the witness. During voir dire, the panel had been asked as to whether they knew the police officer, and no one had responded to this question at that time.

■ The paramount consideration in incidents of this kind is whether or not the inaccurate statement was intentional. Where the juror obviously attempts to conceal the truth, prejudice to the defendant is more easily presumed. The determination of this question must be left to the sound discretion of the trial court. State v. Jackson, 412 S.W.2d 428, 432[1, 2] (Mo.1967). Here the trial court did not abuse its discretion in refusing to grant a new trial.

The defendant's third contention of error concerns the court's denial of defendant's motion to suppress the identification testimony of two witnesses. These witnesses were the proprietor of the tavern and the vending truck attendant. Citing the well known cases dealing with lineups and confrontations, commonly known as "the Wade trilogy",[1] and their progeny, defendant maintains that a confrontation in the hospital at which both the tavern proprietor and the vending truck attendant identified him as the person who earlier that same evening shot the police officer was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied his right to due process of law secured by the fifth and fourteenth amendments.

Before identification at the hospital, however, the tavern proprietor was questioned by police officers and gave a fairly detailed description of the clothes worn by the person who shot the officer and a general description of his facial features. He also revealed to the police that he thought that this person had been injured during the incident because he saw him flinch and grab his side when he ran behind the truck. The hospital identification occurred about fifteen or twenty minutes after the incident itself. In spite of initial reservation, he identified the person at the hospital as the person who shot the police officer. The vending truck attendant also gave the police a description of the defendant at the scene. Then within a short time at the hospital, he identified the defendant as the man whom he had seen shoot the officer.

■ In evaluating the suggestiveness of a particular confrontation and the likelihood of misidentification, we look to factors such as the opportunity of the witness to view the accused at the time of the alleged crime, the accuracy of the witness's prior description of the accused, the certainty of the witness at the confrontation, the length of time between the crime and the confrontation, and the need for police to determine at the earliest opportunity whether the person suspected is in fact the person sought. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, supra, 388 U.S., 1.c. 302, 87 S.Ct. 1967; State v. Townes, 461 S.W.2d 761, 763[1] (Mo.1970), cert. den. 407 U.S. 909, 92 S.Ct. 2445, 32 L.Ed. 2d 683 (1972). The testimony of the two witnesses indicated that their observation of the defendant during the attempted robbery was sufficient to enable them to give investigating police officers a reasonably accurate description of this person prior to the confrontation. The subsequent confrontation occurred within a very short time of the original observation by the witnesses of the incident and its participants. Despite the initial uncertainty of one wit-

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 1199 (1967).

ness, both witnesses were certain of their identifications at the time of the confrontation in the hospital. In addition, their subsequent in-court identifications of the defendant had sources of identification independent of the confrontation at the hospital. Such independent sources of identification are enough to overcome any claim of unnecessary suggestiveness. State v. Jackson, 477 S.W.2d 47, 51[4] (Mo.1972); State v. Walters, 457 S.W.2d 817, 822[5] (Mo.1970). The trial court properly overruled the defendant's motion to suppress identification testimony and properly admitted the subsequent in-court identification testimony of the two witnesses.

The final contention of error arises out of the refusal of the trial court to discharge the jury because of certain remarks of the prosecuting attorney which defendant declares amounted to a forbidden reference to defendant's failure to testify in his own behalf. This occurred after the prosecuting attorney had stated to the jury that on the night of the attempted robbery there was only one man wearing a brown suit who sought medical help for a gunshot wound. Defendant's attorney objected upon the ground that there was no evidence in the record indicating how many people had been treated for gunshot wound and was sustained. Thereupon the prosecuting attorney stated: "Had there been any such evidence the defense would have brought it to you. The defense was free under our rules they can bring anything they want."

Statements concerning the failure to present testimony made by a prosecuting attorney in argument neither violates defendant's constitutional right against self-incrimination nor violates defendant's right not to have the state make reference thereto, provided the reference in those statements is to the failure of the defense to offer evidence rather than a direct reference to the defendant's own failure to testify. State v. Pruitt, 479 S.W.2d 785, 789[8] (Mo. banc 1972); State v. Hutchinson, 458 S.W.2d 553, 555[3] (Mo.

banc 1970). The remarks of the prosecuting attorney here pointed out the failure of the defense to offer any evidence that on the night of the attempted robbery there existed someone other than the defendant who was wearing a brown suit and was seeking medical attention for a gunshot wound. This was directed to failure to offer evidence upon a specific issue and did not refer to defendant's failure to testify.

The state has filed a motion to remand for sentencing, contending that the imposition of concurrent sentences by the court is contrary to the terms of § 546.480, RSMo.1969, V.A.M.S. This section does not apply where the indictment or information is drawn in separate counts under the provisions of Rule 24.04, V.A.M.R. The motion is therefore denied.

Judgment is affirmed.

DOWD, C. J., and SIMEONE and KELLY, JJ., concur.